IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOWELL CHARLES LAAKE, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> R. MOONEY, Captain of Security, *et al.*, ) <br> ) <br>     Defendants. ) | Civil Action No. 3:22-cv-17 <br> Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**

Lowell Charles Laake ("Laake"), a pro se state prisoner, brings this action pursuant to 42 U.S.C. § 1983 raising claims under the Eighth and Fourteenth Amendments to the United States Constitution regarding events that occurred at the State Correctional Institution at Houtzdale ("SCI Houtzdale"). He alleges that after certain gang-affiliated prisoners at SCI Houtzdale threatened him with physical harm, he reported these concerns to prison officials and requested protective custody or transfer to another prison. However, his complaints were ignored and he was placed in the Restricted Housing Unit ("RHU") as punishment. Named as defendants are Captain of Security R. Mooney ("Mooney") and Lieutenants P. English and J. Oliver.

Pending before the Court is Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 53). For the reasons that follow, the motion will be granted.

I. **Procedural History**

Laake commenced this action in February 2022. He later filed an Amended Complaint (ECF No. 12) and, in response to the Defendants' motion to dismiss, a Second Amended

Complaint ("SAC") (ECF No. 46). As relief, he requests transfer to another prison[1], compensatory damages for pain and suffering and punitive damages.

On September 1, 2022, Defendants filed a motion to dismiss the SAC (ECF No. 53), which has been fully briefed (ECF Nos. 54, 59).

## II.  Factual Allegations in the Second Amended Complaint

Laake alleges that, on October 15, 2021, he made a request to the security department for a transfer based upon "verified threats" made against him. (ECF No. 46 at 11-15.) Specifically, those threats included a demand by an unknown member of a gang known as the Bloods to pay "rent" because there was a "price on [his] head." (*Id.* at 11.) He asserts that he reported this threat to security, and while Defendant English told him he would be transferred without having to go to general population, the transfer did not occur. (*Id.* at 12.) In support of this claim, Laake attaches DC-141 form which notes that he was placed in administrative custody ("AC") pending review of his security status. (*Id.* at 14.) The Program Review Committee ("PRC") conducted a review on October 21, 2021 and decided that he should remain in AC. (*Id.* at 15.) A week later, he was told that he was going to be released to general population, but on the "other side of the jail." (*Id.* at 12.)

Laake claims that, on November 12, 2021, two inmates came to his cell and told him "they got word from the other side of the jail" that he was either to start paying "rent" or else they would "collect on the price on my head." (*Id.* at 16.) Laake claims that he told Corrections

---

[1] On October 5, 2022, he was transferred to SCI Waymart (ECF 60). Because of this development, an order was entered on November 28, 2022 (ECF No. 61) denying Laake's motion for injunctive relief (ECF No. 29), which sought protective custody and an expedited transfer, as moot.

Defendants the identity of the two people who threatened him ("Panama" and "Javie") and picked them out of a photo lineup provided by Defendant Mooney. (*Id.* at 17.) He contends that there should be video of them entering his cell and he asked that it be preserved. (*Id.* at 8, 18.)

On November 17, 2021, Laake was ordered to return to his housing but refused based on his alleged concerns for his safety. (ECF No. 46 at 19.) He pleaded guilty to refusing to obey orders, stating that "I have a hit out on me by the bloods and I cannot be out in [general population]," and was sentenced to thirty days of disciplinary custody ("DC"), to be served in the RHU. (*Id.* at 20.) Laake made similar claims to the PRC several days later. The PRC responded that he should "continue to work closely [with] the security office." (ECF No. 46 at 22.)

On December 1, 2021, Laake attempted to commit suicide because he was "so depressed and overwhelmed … [d]ue to the fact that [he] was not receiving any help … [and] asking for protected custody and not being granted it." (*Id.* at 50.) After this attempt, he was taken to the medical department and placed in a psychological evaluation cell. Since that time, he has been having stomach problems and was placed on medication. When Laake again informed the PRC of his concerns about returning to general population, he was told to contact security. (*Id.* at 51.) On December 3, 2021, he was placed in the RHU, apparently to serve the remaining time of DC. (*Id.* at 52.)

On several other occasions, Laake raised his concerns with the PRC or other staff members and was told to speak with security. (*Id.* at 21-22; ECF No. 46-5 at 2-3.) On December 10, 2021, he wrote to Mooney regarding his concerns, and Mooney responded by asking "What are your issues and be specific?" (ECF No. 46-5 at 1.) The SAC does not identify a response by Laake.

3

Laake refused orders on December 16, 2021, to return to general population. (ECF No. 46 at 24-26.) He pleaded guilty and was sentenced to sixty days of DC. (*Id.* at 29.) He then wrote to Superintendent Barry Smith concerning his request for protective custody. Mooney responded to this request, asking Laake to "[p]lease provide your details in writing to myself as previously requested. I have not received anything from you." (ECF No. 46-5 at 4.) Laake also filed a grievance alleging that the security department was failing in its duties. (ECF No. 46-2 to 46-4.)

Laake responded to Mooney on December 22, 2021, with some additional details. Specifically, he stated that the "hit" against him arose from his time on "the streets" when he allegedly "put one of [their] OG's [sic] in a wheelchair for the rest of his life." (ECF No. 46-5 at 5.) Mooney responded by asking for the name of the individual who was put in a wheelchair, as well as the name of the Bloods inmate who was after him, and told Laake that "I need details." (*Id.*) Laake wrote to Mooney again on January 17, 2022, in which he raised similar concerns but admitted that he did not know the names of the Bloods members who were after him, nor did he know the name of the person he purportedly put in a wheelchair. (*Id.* at 6.)

On January 15, 2022, Laake was written up for refusing to take a cellmate because he feared that it could be someone who would carry out the "hit" placed on him. (ECF No. 46 at 30-31.) He received thirty days in DC. (*Id.* at 33.) He again received a write up for refusing to return to general population on March 10, 2022 and received thirty more days of DC. (*Id.* at 36.)

Laake was seen by the PRC on April 14, 2022. He told the PRC about his concerns and said he would refuse to go to general population because they were trying to put him in "housing unit F/B," which is where the incident with the two inmates occurred in November. As a result, he was written up for his refusal. (ECF No. 46 at 37, 40.)

Laake was seen by the PRC on May 12, 2022 for a 90-day review and again raised security concerns. He claims that he was switched from DC status to AC status, an action which he had requested for months. (*Id.* at 41-42.) Several days later, he received a report that stated that there might be a security concern with his placement in general population and that his status was "pending a potential transfer." He contends that this realization was long overdue and claims that it could have been delayed because Mooney, English and Oliver were not doing their jobs properly. (*Id.* at 47.) Later in May, he was seen again by the PRC and the same report was issued. (*Id.* at 47-49.)

As previously referenced, Laake was transferred to another correction institution in October 2022.

Laake seeks compensatory damages for "mental duress" and exacerbation of his "preexisting mental conditions," as well as damages for continued medical problems caused by his suicide attempt.

**III.   Discussion**

  A.  Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d

203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

As Defendants assert, although "well-pleaded allegations must be accepted as true for purposes of this motion, the Court need not accept as true allegations that are directly contradicted by indisputably authentic documents on which the complaint relies, or matters of public record." *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) (citing *Pension Benefit Guarantee Corp. v. White Consolidated Indus., Inc.*, 998 F.3d 1192, 1197 (3d Cir. 1993); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Laake has attached numerous communications with prison personal and a grievance that he submitted as exhibits to the SAC to support the allegations therein.

The Supreme Court has stated that "the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a

curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). However, factors that weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

    B. <u>Section 1983 Claims</u>

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The SAC alleges a violation of the Eighth Amendment, which prohibits prisoners from being subjected to "cruel and unusual punishment." Laake also asserts a Fourteenth Amendment claim that his liberty interest in being protected from violence by other prisoners was violated.

    1. Eighth Amendment Claim

Under the Eighth Amendment, prison officials "must take reasonable measures to

7

guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation and citation omitted). Accordingly, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To establish an Eighth Amendment failure to protect claim, a plaintiff must show that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference to [his] health or safety." *Id.* at 834. Deliberate indifference is proven by showing that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835.

In *Knox v. Doe*, 487 F. App'x 725 (3d Cir. 2012), a prisoner who alleged that "someone in the jail" was going to hurt him was subsequently attacked by another inmate. The Court of Appeals affirmed the dismissal of the case, stating that: "No evidence exists that Knox told prison officials which other prisoners were making the threats or why they were doing so. Prison officials could not have been deliberately indifferent in the absence of facts indicating a substantial risk of harm to Knox." *Id.* at 728.

Defendants contend that, as in *Knox*, Laake's statements that he was in fear for his life and safety did not provide them with sufficient information to conclude that he was at substantial risk and thus, they could not have been deliberately indifferent to such risk. Although the SAC alleges that Laake provided the names of the inmates who threatened him, the contemporaneous documents that Laake attached to the SAC do not support these allegations. Indeed, the

8

documents that accompany the SAC reflect that prison officials repeatedly asked for the information needed to investigate his allegations and he did not provide it. Moreover, in response to requests from Mooney to provide the identity of the individuals who threatened him, Laake responded: "What kind of idiot would I be trying to find out the names of people that [are] out to harm me." (ECF No. 46-5 at 6-7.)

However, even accepting as true Laake's allegations in the SAC, he does not state an Eighth Amendment claim. An official's deliberate indifference to the prisoner's risk of harm must actually cause him harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). A prisoner's fear of harm which never occurs does not state a claim for which he can recover damages. *See Dongarra v. Smith*, 27 F.4th 174, 178 (3d Cir. 2022) (prisoner who was forced to identify as a sex offender even though he was not could not recover damages because no one ever physically assaulted him).

Here, Laake does not allege that he was ever attacked or sustained any physical harm. At most, he alleges that he was threatened with harm. He cannot rely upon being sent to the RHU as "harm" that he suffered because it is undisputed that he was sent to the RHU for refusing orders to return to general population. Indeed, Laake acknowledges that he was first placed in AC after reporting threats and later, after refusing to return to general population on several occasions, was placed in DC. Nor has he alleged that he sustained any physical harm as a result of being housed in the RHU. In the absence of any physical harm, his claims of mental distress and aggravation of pre-existing mental conditions are barred by the Prison Litigation Reform Act, which provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical harm." 42 U.S.C. § 1997e(e). *See Ceasar v. Varner*, 2022 WL 9491877, at *6 & n.8 (W.D. Pa. Oct. 14, 2022).[2]

Laake also contends that he attempted suicide while in the RHU because he was depressed, was not receiving any help with his problems and was being punished for his fears for his life and safety. Since then, he states that he has experienced stomach problems. However, this is not the "substantial risk of harm" that he reported to prison officials, nor has he alleged that he had a particular vulnerability to suicide of which Defendants should have been aware. *See Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017) (a prisoner must show: (1) that he had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of his particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to his particular vulnerability). Thus, the physical problems that he attributes to his suicide attempt are unrelated to the claim he has asserted.

Thus, Laake has failed to state a claim for failure to protect under the Eighth Amendment and Defendants' motion to dismiss will be granted.

### 2. Fourteenth Amendment Claim

Defendants argue that, to the extent that Laake asserts that his Fourteenth Amendment rights were violated because he was not transferred to another prison or placed into protective custody, he cannot state a claim because he does not have a liberty interest in being housed at

---

[2] When a risk of harm still exists, injunctive relief may be an available remedy. *See Helling v. McKinney*, 509 U.S. 25, 34 (1993). As previously noted, Laake has been transferred to another prison and does not assert any claims related to his present incarceration.

any particular prison or at a certain level of custody.

Defendants are correct that the Constitution does not guarantee that a convicted prisoner will be placed in any particular prison. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). *See also Montanye v. Haymes*, 427 U.S. 236 (1976) (prisoner has no due process right to a hearing prior to being transferred to another prison). "Consequently, custodial personnel do not infringe an inmate's liberty interests by placing her in one custodial facility rather than another." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015). Nor does a prisoner have a right to be assigned a particular custody level or security classification. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). *See also Roque v. Gavin*, 2013 WL 3103108, at *2 (M.D. Pa. June 18, 2013) (prisoner who alleged that prison officials denied his request for placement in protective custody or transfer to a safer prison failed to state a due process claim).

Thus, any claim that is based on the failure to transfer Laake or place him in protective custody, neither of which resulted in any harm, does not state a claim on which relief may be granted.

Laake's due process claims that are based on the imposition of disciplinary custody or placement in the RHU similarly are without merit. The Supreme Court has recognized that states "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Receiving a thirty or sixty-day sentence of disciplinary custody for refusing commands to return to general population does not impose atypical and significant hardships in relation to the ordinary incidents of prison life. *See id.* at

486 (prisoner in *Sandin* did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day detention, although punitive, "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction.")

Here, the mere fact that Laake placed in disciplinary custody and/or in the RHU does not state a civil rights claim. As pleaded in the SAC, Laake was placed in DC because he violated orders to return to general population. Regardless of the reasons why he may have disobeyed these orders, he fails to allege that he sustained any atypical or significant hardship while housed in the RHU or while in disciplinary custody. Thus, he has failed to state a claim under the due process clause of the Fourteenth Amendment.

    C. Leave to Amend

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff a chance to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Notably, Laake has already amended his complaint twice. Under the circumstances presented here, any further amendment of his Eighth Amendment claim would be futile. Laake's own allegations reveal that despite receiving threats and fearing for his safety, he sustained no physical harm, which is a necessary element of a failure to protect claim. His Fourteenth Amendment claim is similarly futile based upon the facts pleaded because custodial decisions do not infringe on liberty interests, nor does Laake have a protected liberty interest in remaining free

12

from discipline or placement in the RHU. Significantly, he does not assert that he sustained any significant hardship as a result of these measures.

Therefore, because amendment would be futile, Defendants' motion to dismiss this claim will be granted with prejudice.

### III. Conclusion

For the reasons explained above, Defendants' motion to dismiss the Second Amended Complaint will be granted.

An appropriate order follows.

Dated: December 28, 2022              /s/ Patricia L. Dodge
                                      PATRICIA L. DODGE
                                      United States Magistrate Judge


cc:     Lowell Charles Laake
        QH-9057
        SCI Waymart
        P.O. Box 256, Route #6
        Waymart, PA 18472